360 So.2d 813 (1978)
STATE of Louisiana
v.
Leonard WILLIE.
No. 61131.
Supreme Court of Louisiana.
June 19, 1978.
Rehearing Denied July 26, 1978.
*814 Max Mercer, Slidell, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Julian J. Rodrigue, Asst. Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Division, Gretna, for plaintiff-appellee.
CALOGERO, Justice.
Defendant Leonard Willie was indicted on March 17, 1975, for the crime of first degree murder. After a trial by jury, defendant was found guilty as charged and was given the mandatory death penalty then required by La.R.S. 14:30(4). On this appeal of his conviction and sentence, defendant relies upon six assignments of error.

ASSIGNMENT OF ERROR NO. 3
Defendant contends that the trial court erred in denying his motion to quash the grand jury indictment on the grounds that the procedure for picking the grand jury set forth in Article 413 of the Code of Criminal Procedure is unconstitutional. Specifically, he asserts that the provision of the article which allows the court, in parishes other than Orleans, to pick the foreman of the grand jury effectively denies him his right to an impartially selected grand jury.
In Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) the United States *815 Supreme Court recognized that the federal constitutional right to indictment by a grand jury is not applicable in a state criminal proceeding; however, it noted that "if a state chooses . . . to use a grand jury, or petit jury, due process imposes limitations on the composition of that jury." Specifically, the court stated that "a state cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary manner, and discriminatory manner in violation of the Constitution and laws of the United States." In State v. Enloe, 276 So.2d 283 (La.1973), this Court recognized that due process requires that a defendant be "afforded a jury from which there has been no arbitrary exclusion of any particular group of individuals." Again, in State v. Cage, 337 So.2d 1123 (La.1976), this Court reiterated that the empaneling of a fair and impartial grand jury is an essential element of the right of an accused to due process under the law.
Nevertheless, a defendant who claims that the method of selection of grand juries violates his constitutional rights must make an affirmative showing that the scheme has fostered discrimination, either in his case particularly, or in a historical context. See State v. Reid, 340 So.2d 551 (La.1976). A claim such as defendant makes here that the system of foreman selection offers a potential for abuse without any proof of abuse does not constitute an affirmative showing of discrimination. Thus, the assignment is without merit.

ASSIGNMENTS OF ERROR NOS. 4, 5, AND 6
Defendant contends that the trial court erred in failing to quash the indictment because of the unconstitutionality of the mandatory death penalty then in force under La.R.S. 14:30, and in excusing for cause two jurors who were conscientiously opposed to the death penalty.
Subsequent to the trial court's refusal to quash the instant indictment, the United States Supreme Court, in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), declared the death penalty as it then existed in Louisiana to be unconstitutional. The proper procedure in such a case is to resentence the defendant to the most severe valid penalty established by the legislature for criminal homicide at the time of the offense. State v. Sheppard, 350 So.2d 615 (La.1977); State v. Smith, 340 So.2d 247 (La.1976). For defendant Leonard Willie that will be life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for twenty years. Further, this court has uniformly held that a defendant insulated from the death penalty has no valid Witherspoon complaint. State v. Sheppard, supra; State v. Nicolaus, 340 So.2d 296 (La.1976); State v. Miles, 339 So.2d 735 (La.1976).
Thus, defendant's position has merit insofar as it raises the invalidity of defendant's death sentence; otherwise the assignments lack merit.

ASSIGNMENTS OF ERROR NOS. 11 AND 12
Defendant contends that the trial court erred when it refused his motion for acquittal based upon assertions that: (1) the state failed to introduce any evidence that the defendant had specific intent to injure or kill more than one person, an essential element of the offense of first degree murder as it then existed;[1] and (2) the state failed to introduce any evidence to rebut defendant's insanity defense.[2] *816 Defendant was charged under Revised Statute 14:30(4) which at that time proscribed as first degree murder the killing of a human being "When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person." Defendant contends that there was no evidence of his specific intent to injure or kill more than one person.
The context facts are these. Defendant Willie knew and apparently was in love with the victim, who was his neighbor. The victim lived with her two children in a trailer behind her parents' home near defendant's home. Apparently angry because she had filed a civil suit to stop his harassing her, defendant wrote several letters to the victim. The letters were not mailed but discovered upon defendant's arrest shortly after the murder. In the letters, defendant related his resolve to kill her and her mother and father. Very early in the morning of Saturday, November 23, 1974 defendant cut the exterior telephone lines, broke into the victim's parents' home, and shot and killed the victim. Defendant apparently knew that on that night the victim was staying in the home of her parents. The jury could also have reasonably believed from the evidence that defendant believed the victim's parents were, by that hour, also in the home, notwithstanding the contrary defense contention to the effect that the parents customarily played cards every Friday night and that defendant knew this.
The parents were not home when defendant invaded their home and thus were unharmed. The two children for whom defendant had earlier expressed affection were in the house but were not harmed. When a neighbor drove up to the house in response to the shotgun fire, defendant shot either at him or at his car, but the neighbor was not struck.
The thrust of the defense contention is that under the facts, especially as they unfolded on the night of the crime, there was not and could not have been any evidence of the type of intent required by R.S. 14:30(4) (specific intent to injure or kill more than one person) at the time defendant killed the victim. With this contention we do not agree.
Considering the minimal "some evidence" limitation on our reviewing a jury verdict of guilty and the evidence in this case (including the pre-crime letters which threatened the lives of the victim and each of her parents, the victim's presence in her parents' home on the night in question and defendant's knowledge thereof, the facts surrounding defendant's invasion of the home at such a late hour which could have indicated defendant's belief that all three intended victims were in the home) we cannot conclude that there was no evidence that defendant had the specific intent to kill or inflict great bodily harm upon more than one person when he shot and killed the victim.
Thus we find no merit to this part of defendant's contention.
Under these assignments, defendant further challenges the Louisiana statutory rule which creates a presumption of sanity and requires the defendant to rebut that presumption. Article 652 of the Code of Criminal Procedure provides that "the defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence." In Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the United States Supreme Court upheld a similar Oregon statutory provision which required that the defendant prove his insanity beyond a reasonable doubt. Subsequently, in Rivera v. Delaware, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976) the high court dismissed as not raising a substantial legal question an appellant's contention that Leland was no longer valid. Consistent with these cases the United States Supreme Court held in Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) that a criminal defendant may be required by *817 state statute to prove the affirmative defense of "extreme emotional distress" without violation of the due process clause where that defense did not serve to negative any essential elements of the offense. In that case the court specifically refused to reconsider Leland and Rivera and rejected the contention that the statute was invalid under Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) saying:
"In convicting Patterson under its murder statute, New York did no more than Leland and Rivera permitted it to do without violating the Due Process Clause. Under those cases, once the facts constituting the crime are established beyond reasonable doubt, based on all the evidence including the evidence, of the defendant's mental state, the State may refuse to sustain the affirmative defense of insanity unless demonstrated by a preponderance of the evidence." 432 U.S. at 203, 97 S.Ct. at 2325.
Under these cases it is clear that if insanity is an affirmative defense the state can without offense to the federal guarantee of due process require a defendant to preponderantly establish his insanity. Conversely, federal due process does not allow a state to require a defendant to prove his insanity if sanity is an element of the offense. An example of this latter situation would arise if the crime in question was one demanding specific intent and the law was to the effect that an insane person lacked the requisite intent. See Grave v. Hopper, 566 F.2d 507 (5th Cir. 1978).
Under Louisiana law, insanity is an affirmative defense that the accused must prove by a preponderance of the evidence. See State v. Watkins, 340 So.2d 235 (La.1976); State v. Craig, 340 So.2d 191 (La.1976); State v. Berry, 324 So.2d 822 (La.1975); State v. Toon, 172 La. 631, 135 So. 7 (1931). There is a presumption in Louisiana law that a person is sane and responsible for his actions, and to successfully rebut that presumption, a criminal defendant must preponderantly establish his insanity. See State v. Glover, 343 So.2d 118 (La.1977); State v. Craig, supra; State v. Clark, 305 So.2d 457 (La.1974). Moreover, the defense of insanity must be specially pleaded. C.Cr.P. art. 552.
Since under Louisiana law insanity is an affirmative defense, there is no federal due process violation in requiring the defendant to preponderantly prove his insanity. We have likewise found as a matter of state law that there is no state due process violation in that requirement. State v. Berry, supra; State v. Brown, 322 So.2d 211 (La.1975).
Accordingly, we find no merit in these assignments of error.

Decree
For these reasons we affirm defendant's conviction but we vacate his sentence of death and remand the case for imposition of a sentence of life imprisonment without benefit of parole, probation or suspension of sentence for twenty years.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.
TATE, J., concurs and assigns reasons.
DENNIS, J., concurs for reasons assigned by TATE, J. See discussion at footnote 2 in State v. Tillman, 356 So.2d 1376 (La.1978).
TATE, Justice, concurring.
The majority is incorrect, it seems to me, when it holds that there was any evidence whatsoever that the intentional killing occurred under the limited statutory circumstances permitted for imposition of the capital penalty for first-degree murder by La.R.S. 14:30, as enacted by Act 107 of 1973.
The only particularized circumstance charged and arguably applicable is 14:30(4), the killing "When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person." At the time the defendant killed the victim, whatever his aborted plans about her parents were, he plainly did not kill the victim with any such requisite intent for capital (first-degree) murder:
The victim was alone in her parents homeso the killing was made only with *818 the specific intent to kill her, which was therefore a non-capital (second-degree) murder in the 1973 statutory scheme. See La.R.S. 14:30.1, as enacted by Act 111 of 1973.
I would not reverse the conviction, however: In fact, the accused does not receive the death penalty (due to its invalidation); whereas the sole statutory effect of proving the statutory aggravating condition was to permit imposition of the death penalty.
I recognize the intellectual difficulty (at least under the prior jurisprudence of this court) in holding the accused guilty of a responsive verdict upon appellate review, rather than ordering a new trial upon sustaining on appeal his motion that such essential element of capital murder was not proved. Nevertheless, under the peculiar non-recurring circumstances here presentedwhere the capital verdict has been held to be unconstitutional, with the effect being that the 1973 first- and second-degree murder are identical crimes, with identical penalties (while the 1973 capital-sentence statute has since been repealed), I would suggest that this is a permissible reasonable solution in this particularized context, since the defendant sustained no prejudice by the overcharge.
The demerit of the majority's opinion is that it finds an aggravating circumstance, in order to uphold the conviction, where in fact there is none. If in fact the accused were going to be executed, I am certain the majority would recognize that no such requisite aggravating circumstance in fact exists.
Under the new capital-punishment scheme, in order to impose the death penalty, one of the aggravating factors a jury must find, in the bifurcated penalty hearing, is that "The offender knowingly created a risk of death or great bodily harm to more than one person." See La.C.Cr.P. art. 905.4(d) (Act 694 of 1976). Obviously, under present facts, such an aggravating circumstance is not present; no more was it under the differing language of the 1973 first-degree murder statute (La.R.S. 14:30), which had the same intent.
For these reasons, I respectfully concur.
NOTES
[1] The first degree murder statute at issue here applies only to crimes committed between July 2, 1973 and October 1, 1976. Because of multiple revisions of the murder statutes in recent years, the particular provision under which defendant was tried applies to a limited number of prosecutions and is no longer in effect. See R.S. 14:30 amended by Acts 1973, No. 109, § 1; Acts 1975, No. 327, § 1; Acts 1976, No. 657, § 1.
[2] Although at the time of defendant's trial, Article 778 of the Code of Criminal Procedure had been amended to eliminate motions for directed verdicts in jury cases, the trial court did not consider this fact in making its ruling and the state has not raised it in brief. Moreover, the issues were raised again by motion for new trial, and error assigned to the judge's refusal to grant relief on these two bases. Thus, we will consider defendant's arguments on the merits.